**Exhibit 4**

| | |
|---|---|
| COLORADO COURT OF APPEALS<br>STATE OF COLORADO<br>2 East 14th Avenue<br>Denver, CO 80203 | DATE FILED: March 3, 2014 11:16 AM<br>FILING ID: E7C9E3768A87D<br>CASE NUMBER: 2013CA1806 |
| Lower Court:  Delta County District Court<br>Case No.: 12CV314<br>Lower Court Judge:  J. Steven Patrick | |
| Plaintiffs-Appellees:<br><br>TRAVIS JARDON; CORRINE HOLDER; SUSAN RAYMOND; MARK COOL; AND ANDREA ROBINSONG,<br>v.<br><br>Defendants-Appellants:<br><br>DELTA COUNTY BOARD OF COUNTY COMMISSIONERS; EDWIN HOSTETLER; EILEEN HOSTETLER; GREG HOSTETLER; CARMEN HOSTETLER; ANNA HOSTETLER AND ROLAND HOSTETLER. | ▲ COURT USE ONLY ▲<br><br>Case No. 2013CA1806 |
| JOHN W. SUTHERS, Attorney General<br>CASEY SHPALL, Deputy Attorney General, #11538*<br>BILLY SEIBER, Senior Assistant Attorney General, #34380*<br>Ralph L. Carr Colorado Judicial Center<br>1300 Broadway, 10th Floor<br>Denver, CO  80203<br>Telephone:  (720) 508-6295; (720) 508-6435<br>Fax:  (720) 508-6039<br>E-Mail: casey.shpall@state.co.us;<br>   billy.seiber@state.co.us<br>*Counsel of Record | |
| **[REVISED] BRIEF OF GOVERNOR JOHN W. HICKENLOOPER, THE COLORADO DEPARTMENT OF PUBLIC HEALTH AND ENVIRONMENT, AND THE COLORADO DEPARTMENT OF AGRICULTURE AS *AMICI CURIAE* IN SUPPORT OF DEFENDANTS-APPELLANTS** | |

**Exhibit 4**

# CERTIFICATE OF COMPLIANCE

I hereby certify that this brief complies with all applicable requirements of C.A.R. 28 and C.A.R. 32, including all formatting requirements set forth in these rules. Specifically, the undersigned certifies that:

The brief complies with C.A.R. 28(g).

    Choose one:
☐ It contains _____ words.
☒ It does not exceed 30 pages.

The brief complies with C.A.R. 28(k).

    ☐ For the party raising the issue: It contains under a separate heading (1) a concise statement of the applicable standard of appellate review with citation to authority; and (2) a citation to the precise location in the record (App.___), not to an entire document, where the issue was raised and ruled on.

    ☐ For the party responding to the issue: It contains, under a separate heading, a statement of whether such party agrees with the opponent's statements concerning the standard of review and preservation for appeal, and if not, why not.

                                           */s/ Casey Shpall*_____
                                           Signature of attorney or party

**Exhibit 4**

# TABLE OF CONTENT

**PAGE**

ARGUMENT ................................................................................................. 2

   I.  This egg-laying farm employed best management practices and was willing to adhere to additional conditions to neutralize any adverse health impacts from its operation. ............ 2

   II.  The lower court's actions contradict the General Assembly's intent to protect well-run agricultural operations from nuisance-based legal challenges.. ..................................................... 5

CONCLUSION ............................................................................................. 7

**Exhibit 4**

# TABLE OF AUTHORIES

**PAGE**

**STATUTES**

§ 35-3.5-101, C.R.S. ...................................................................................5

§ 35-3.5-102(1)(a), C.R.S..............................................................................6

§ 35-3.5-102(1)(a), C.R.S..............................................................................6

**RULES**

C.R.C.P. 106(a)(4)........................................................................................6

**REGULATIONS**

5 Colo. Code of Regs. 1002-81: 81.3(3) ......................................................2

5 Colo. Code of Regs. 1002-61:61.17..........................................................3

5 Colo. Code of Regs. 1002-81:81.6…………………………….............. 3

5 Colo. Code of Regs. 1002-81:81.3(4) .......................................................3

5 Colo. Code of Regs. 1002-81:81.3(6) .......................................................3

**Exhibit 4**

Governor John W. Hickenlooper, the Colorado Department of Public Health and Environment ("CDPHE"), and the Colorado Department of Agriculture ("CDA"), by and through undersigned counsel, respectfully submit this Brief of *Amici Curiae* in the above-captioned case.

## ARGUMENT

**I. This egg-laying farm employed best management practices and was willing to adhere to additional conditions to neutralize any adverse health impacts from its operations.**

As the Court reviews this case, it is helpful to keep in mind levels of regulation pertaining to farming. This particular farm was a small animal feeding operation ("AFO"), defined as a facility with less than 25,000 layer chickens. 5 Colo. Code of Regs. 1002-81: 81.3(3). The actual number of birds at the Hostetler farm was 15,000 layer chickens. These smaller farms are regulated as AFOs, while facilities with larger numbers of chickens are

2

regulated as Concentrated Animal Feeding Operations ("CAFOs"). 5 Colo. Code of Regs. 1002-81:81.3(6).[1]

Animal feeding operations, such as the Hostetlers, rely on the implementation of best management practices ("BMPs") to reduce environmental impacts. All animal feeding operations in Colorado are subject to the best management requirements for the purpose of protecting waters of the state. 5 Colo. Code of Regs. 1002-81:81.3(4). BMPs include any activity, procedure, or practice necessary for the reduction of impacts from animal feeding operations on surface or ground water. *Id.* BMPs can reduce runoff of pollutants into surface water, help to reduce odor, or protect groundwater from nitrate pollution and other contaminants.[2]

Here, the Hostetler farm employed practices similar to other poultry operations in Colorado and across the nation. The farm utilized BMPs prior to its closure and had secured the assistance of Colorado

---

[1] Large egg-laying CAFOs have 82,000 or more layer chickens.

[2] CAFOs are subject to more extensive regulation. *See, e.g.*, 5 Colo. Code of   Regs. 1002-61:61.17; -81:81.6.

3

**Exhibit 4**

State University to implement an air monitoring program. The farm also employed several emission control measures not required by law in order to minimize undesirable air emissions.³ In short, this farm went beyond all regulatory requirements. Indeed, the County placed sixteen conditions on this development plan to address any negative impacts to the surrounding community. The Delta County Board of County Commissioners ("County Board") evaluated the disputed evidence about the farm's operations on public health and struck a balance between agricultural development and measures to protect the broader community. In this case, the *Amici* support the County Board's ability to weigh competing evidence, even if the opponents disagreed with the resolution to their concerns. Notwithstanding the decision of the community's elected representatives, the Hostetlers' cage-free egg farm

---

³ The measures utilized included: use of wood chips/saw dust inside the facility to control airborne emissions from the facility and for bird comfort; water misting inside the facility to moderate temperatures and decrease airborne emissions from the facility; adjustable dampers located along the side of the building used to control air movement and introduce fresh air through the building; and, shroud walls constructed around fans to provide a reduction in airborne emissions.

was ordered to cease operations even though it was in compliance with all applicable state and local laws and regulations.

    **II.    The lower court's actions contradict the General Assembly's intent to protect well-run agricultural operations from nuisance-based legal challenges.**

The Colorado General Assembly, understanding the importance of agriculture in this state, adopted the Nuisance Liability of Agricultural Operations Act ("Right to Farm Act") to "reduce the loss to the State of Colorado of its agricultural resources by limiting the circumstances under which agricultural operations may be deemed to be a nuisance." § 35-3.5-101, C.R.S.

The statute's legislative declaration sets forth: "It is the declared policy of the State of Colorado to conserve, protect, and encourage the development of its agricultural land for the production of food and other agricultural products." *Id*.

Critical to the Right to Farm Act is the affirmative defense set forth within it: "[A]n agricultural operation shall not be found to be a public or private nuisance if the agricultural operation alleged to be a

5

nuisance employs methods or practices that are commonly or reasonably associated with agricultural production." § 35-3.5-102(1)(a), C.R.S.  Through this Act, the General Assembly demonstrated its intent to protect farms such as the Hostetlers', which employ normal agricultural practices and comply with all state and local regulatory requirements, from legal action by opponents seeking to shut down such operations.

The actions of the County Board were fully consistent with Colorado's declared policy of encouraging agricultural operations that employ reasonable or common methods and practices.  The Board held hearings, received testimony, and reviewed thousands of pages of evidence, including positive CDPHE assessments of the operations.  The Board's work to reach a thoughtful and fair decision is consistent with the intent of the General Assembly and the interests of their constituents and thus deserves respect and deference.

While plaintiffs lawsuit is brought under C.R.C.P. 106(a)(4), it is akin to a nuisance lawsuit that should have been barred under §35-3.5-

6

102(1)(a), C.R.S.  Stated differently, the decision of the lower court undermines the Right to Farm Act by providing an alternative mechanism for opponents of farming operations to bring nuisance claims.  The lower court thus empowered the opponents to sidestep the General Assembly's mandate, shutting down a viable agricultural operation that was in compliance with all regulatory requirements.  This result ignores Colorado's long-standing policy to conserve, protect, and encourage the development of state's agricultural land for the production of food and other agricultural products, as recognized by the General Assembly in the Right to Farm Act.

## **CONCLUSION**

State law and regulations, as well as the agencies enforcing them, are supportive of Colorado's farming operations that follow best management practices and use common farming techniques.  Here, the County Board made a considered determination to approve the Hostetlers' farming operation.  This determination is entitled to substantial deference.  The district court's decision to overturn the

Board represents an unwise and unprecedented intrusion into the legitimate activities of this Colorado farming operation.

Based on the foregoing arguments, the Governor, the CDPHE, and the CDA ask this Court to reverse the lower court decision and vacate its order to the County Board to issue the Hostetlers a cease and desist order for their egg-laying farm.

Respectfully submitted this 21th day of February 2014.

        JOHN W. SUTHERS
        Attorney General

        /s/ *Casey Shpall*
        CASEY SHPALL, 11538*
        Deputy Attorney General
        Natural Resources and Environment

        /s/ *Billy Seiber*
        BILLY SEIBER, 34380*
        Senior Assistant Attorney General
        Business and Licensing
        *COUNSEL OF RECORD

**Exhibit 4**

# CERTIFICATE OF SERVICE

I certify that I duly served by ICCES on this 3rd day of March, 2014, a true and correct copy of the foregoing [REVISED] **BRIEF OF** *AMICI CURIAE* upon the following:

Earl G. Rhodes
743 Horizon Court
Suite 200
Grand Junction, CO 81506

Brandon L. Jensen
Joshua A. Tolin
Karen Budd-Falen
Budd-Falen Law Offices, LLC
300 East 18th Street
Post Office Box 346
Cheyenne, Wyoming 82003-0346

Stephen G. Masciocchi
Holland & Hart LLP
555 Seventeenth Street
Suite 3200
Denver, Colorado 80202

Christine L. Knight
County Attorney
320 W. 5th Street
Delta, CO 81416

_____

Suzanne Burdick