Case No. 1:22-cv-00689-LTB   Document 17-2   filed 03/15/22   USDC Colorado   pg 1 of 11

UNITED STATES DISTRICT COURT
DENVER, COLORADO
3:55 pm, Mar 15, 2022
JEFFREY P. COLWELL, CLERK

**Exhibit 2**

3                                                                                                             RIGHT TO FARM AND RANCH

# ARTICLE 3
# RIGHT TO FARM AND RANCH

## TABLE OF CONTENTS

| | | |
|---|---|---|
| **3.1** | **RIGHT TO FARM AND RANCH** | 3-1 |
| 3.1.1 | **Policy Statement** | 3-1 |
| A. | Definition. | 3-1 |
| B. | Agriculture is Integral to Chaffee County | 3-1 |
| C. | Agricultural Operations Warrant Protection | 3-1 |
| D. | Lawful Agricultural Operations are not a Nuisance | 3-1 |
| E. | Other Land Users and Visitors on Notice | 3-1 |
| F. | Fencing Responsibility | 3-2 |
| G. | Irrigators' Right to Maintain Ditches | 3-2 |
| H. | Landowners' Responsibilities | 3-2 |
| 3.1.2 | **Limitation on Private Action** | 3-2 |
| A. | No Nuisance | 3-2 |
| B. | Exclusions | 3-3 |
| C. | Rebuttable Presumption of Non-Negligent Operation | 3-3 |
| D. | Penalties | 3-3 |
| 3.1.3 | **Irrigation Ditches** | 3-3 |
| A. | Irrigation Ditch Easements | 3-3 |
| B. | Irrigation Ditch Setbacks | 3-4 |
| C. | Irrigation Ditch Crossings and Modifications/Realignments | 3-5 |
| D. | Agreement by Ditch Owner(s) | 3-6 |
| E. | Lots Below Irrigation Ditches | 3-6 |
| F. | Improper Uses of Ditches | 3-6 |
| G. | Interfering with Adjusted Headgates | 3-6 |
| H. | Altering Ditches to Divert Water or Activity within the Maintenance Easement | 3-6 |
| I. | Penalties | 3-6 |
| 3.1.4 | **Fencing** | 3-6 |
| A. | Fencing Responsibility | 3-6 |
| B. | Penalties | 3-7 |
| 3.1.5 | **Livestock Easements in New Developments** | 3-7 |
| 3.1.6 | **Agricultural Land Use Conflict Resolution Program** | 3-7 |
| A. | Creation of Program. | 3-7 |
| B. | Mediation Panel to Resolve Conflicts. | 3-7 |
| C. | Mediation Panel—Member Pool | 3-7 |
| D. | Selection of a Panel | 3-8 |
| E. | Compensation. | 3-8 |
| F. | Process and Rules. | 3-8 |

      G.      Confidentiality. ....................................................................................3-8

**3.1.7**     **Review of Applications and Public Education**. ......................................3-8
      A.      Review of Applications. ..........................................................................3-8
      B.      Public Education. ...................................................................................3-9

**3.1.8**     **Application.** ................................................................................................3-9

Exhibit 2

# ARTICLE 3
# RIGHT TO FARM AND RANCH

## 3.1     RIGHT TO FARM AND RANCH

*The Board of County Commissioners adopted Ordinance 2008-02, Right to Farm and Ranch, on March 4, 2008.  The following is verbatim from the ordinance, with the exception of changes to numbering to reflect this format, and excepting Section 9, 10, and 11 regarding validity, repealer and safety, which are incorporated into Section 1.1 of this Land Use Code.*

### 3.1.1     Policy Statement

**A.     Definition.**  "Agriculture" means the science, art and practice of producing plants and animals useful to man, including, to a variable extent, the preparation of these products for man's use and their disposal by marketing or otherwise, and includes horticulture, floriculture, viticulture, aquiculture, forestry, dairy, livestock, poultry, bee, and any and all forms of farm products and farm and ranch production.

**B.     Agriculture is Integral to Chaffee County.**  Ranching, farming, and all manner of agricultural activities and operations within Chaffee County are integral elements of and necessary for the continued vitality of the County's history, tourism, economy, landscape, open space, water, lifestyle, and culture.

**C.     Agricultural Operations Warrant Protection.**  Given their importance to Chaffee County, the Colorado central mountain region and the State, agricultural lands and operations are worthy of recognition and protection.

**D.     Lawful Agricultural Operations are not a Nuisance.**  Colorado is a "Right-to-Farm" State pursuant to C.R.S 35-3.5-101, et seq. Landowners, residents and visitors must be prepared to accept the activities, sights, sounds, and smells of Chaffee County's agricultural operations as a normal and necessary aspect of living in a County with a strong rural character and a healthy agricultural sector.  People with urban expectations may perceive agricultural activities, sights, sounds, and smells as inconvenient, an eyesore, or unpleasant.  State law and County policy, however, provide that ranching, farming, or other customary agricultural activities and operations within Chaffee County shall not be considered to be nuisances so long as operated in conformance with the law and in a non-negligent manner.

**E.     Other Land Users and Visitors on Notice.**  Residents and visitors must be prepared to encounter noises, odors, lights, mud, dust, smoke, chemicals, machinery on public roads, livestock on public roads, storage and disposal of manure, storage of feed and equipment, grazing, branding, castrating and processing of livestock, fieldwork, burning of ditches and fields, historical irrigation practices including flood and sprinkler, and the application of chemical fertilizers, soil amendments, herbicides, and pesticides by spraying and other mechanisms, pursuant to applicable state and federal laws.  Children and adults are exposed to different hazards in the country than in an urban or suburban setting.  Farm equipment, hay stacks, ponds and irrigation ditches, electrical power for pumps /

center pivot operations and electrical fences, traffic, use of agricultural chemicals, weeds such as: sand burs, puncture vines that cause mechanical injury, territorial farm dogs, and livestock present real and potential threats to children and adults. Controlling children's activities is important, not only for their safety, but also for the protection of the farmer's livelihood.  Open irrigation waters are essential to agriculture and have legal easements that must not be obstructed.  Open ditch operations often result in historical cleanouts, seepage and spills of storm waters in unpredictable locations and times.  A ditch owner shall not be liable for any injury to persons or property resulting from unauthorized use of the ditch, including without limitation, wading, tubing, floating, and fishing.

**F.     Fencing Responsibility.**  All landowners, whether agricultural operators or residential owners, have obligations under State law and County regulation/ordinance to maintain fences and adhere to Colorado laws that require livestock to be fenced out (open range) rather than in.  An agricultural operator shall not be liable for damage caused by livestock in situations where a landowner adjacent to an existing agricultural operation fails to provide suitable fencing (subject to express limitations under applicable law).

**G.     Irrigators' Right to Maintain Ditches.**  Pursuant to Colorado law and County resolution/ordinance, irrigators have the right to maintain irrigation ditches, at any time and without notice to the property owner, through easements that transport water for their use and such irrigation ditches are not to be used for the dumping of refuse.  The determination of the need for and nature and method of ditch maintenance is solely up to the ditch owner(s), provided the ditch owner(s) is working within the easement and complying with applicable law.  Crossing of ditches (including without limitation roads, driveways, bridges, culverts, utilities, fords and fences) may unduly interfere with or hinder ditch operations and are therefore subject to the reasonable control and prior consent of ditch owner(s).

**H.     Landowners' Responsibilities.**   All landowners are responsible for controlling noxious weeds, keeping pets under control, using property in accordance with this Section and all other applicable codes and regulations, and wisely managing the environmental resources of their property.  A property owner's use of ditch water is limited by state law.

### 3.1.2     Limitation on Private Action

**A.     No Nuisance.**  An agricultural operation shall not be found to be a public or private nuisance if the agricultural operation alleged to be a nuisance employs methods or practices that are commonly or reasonably associated with agricultural production in Chaffee County. An agricultural operation that employs methods or practices that are commonly or reasonably associated with agricultural production shall not be found to be a public or private nuisance as a result of any of the following activities or conditions:

    **1.**     Change in ownership; or

    **2.**     Nonpermanent cessation or interruption of farming or ranching; or

    **3.**     Participation in a government-sponsored agricultural program; or

**4.** Employment of new technology; or

**5.** Change in the type of agricultural product produced.

**B.     Exclusions.**  Notwithstanding any provision of this section to the contrary, an agricultural operation shall not be found to be a public or private nuisance if such agricultural operation:

**1.** Was established prior to the commencement of the use of the area surrounding such agricultural operation for nonagricultural activities;

**2.** Employs methods or practices that are commonly or reasonably associated with agricultural production; and

**3.** Is not operating negligently.

**C.     Rebuttable Presumption of Non-Negligent Operation.** Employment of methods or practices that are commonly or reasonably associated with agricultural production in Chaffee County shall create a rebuttable presumption that an agricultural operation is not operating negligently.

**D.     Penalties.**  The court may, pursuant to C.R.S. 13-16-122 and 13-17-102, award expert fees, reasonable court costs, and reasonable attorney fees to the prevailing party in any action brought to assert that an agricultural operation is a private or public nuisance.

### 3.1.3   Irrigation Ditches

**A.     Irrigation Ditch Easements.**

**1.** Under Colorado law, a ditch owner has an easement as wide as reasonably necessary for maintenance, operation and repair of a ditch.  Such an easement may exist over private property.  The County recommends that the easement be wide enough to provide continuous vehicular access along the length of at least one side of the ditch (typically, 15 feet, however access issues and terrain may necessitate a different width) in order to facilitate maintenance.  If there are existing trees within the easement, the easement shall be located adjacent to the trees, so that the trees will not hinder access.  Nothing in this recommendation is intended to alter state law or other rights or agreements which may define the width of such easement.  If there is a dispute regarding the width or extent of such easement, the County recommends that the parties utilize the Agricultural Land Use Conflict Resolution Program discussed below.

As a condition of approval of any Land Use Change (as defined by the Chaffee County Land Use Code), minor plat correction, lot line adjustment, building code permit for new construction, or Individual Sewage Disposal System Permit, a minimum 15 foot ditch maintenance easement from the top edge of a ditch bank shall be shown on all plats, surveys, plans, drawings or similar documents submitted after the effective date of this Ordinance.  The easement must connect to subdivision or county roads or other recorded ditch easement.  The top of the ditch is considered to be the lowest point, as measured at any cross-

   section, at which water could overflow.  If there are existing trees within the minimum easement, the easement shall be located adjacent to the trees, so that the trees will not hinder access.

2. Easements of additional width may be required by the Board where warranted because of terrain or other circumstances in which the ditch owner can demonstrate an historical necessity to ensure adequate maintenance.  Similarly, a lesser width may be approved by the Board in circumstances in which the applicant can demonstrate a lesser width is adequate.  The County may obtain a recommendation from the mediation panel described below as to whether additional or lesser width is warranted.   Notwithstanding the width of the ditch easement proposed by the developer, within the specifications of this Section, or approved by the Board, the ditch owner(s) may have rights to an easement or right-of-way which is larger in size under the rules of adverse possession and prescription, other prior rights, or under applicable state or federal law.  Activities of the County or subdivider are not intended to annul or abridge these rights.

3. A property owner may not place any structures, plantings or other devices within the ditch easement if such hinders the ditch or the reasonable maintenance of the ditch unless prior written, notarized and recorded permission has been granted by the ditch owner(s).

**B.     Irrigation Ditch Setbacks.**  Building envelopes shall be required for all properties adjoining or adjacent to an irrigation ditch which are undergoing a Land Use Change (as defined in the County's Land Use Code), minor plat correction, lot line adjustment, any building code permit, or Individual Sewage Disposal System Permit after the effective date of the Ordinance.  No structures, including overhangs, shall be located within the setback.

1. **Adjacent Grade 5 Percent or less.**   Where the grade of the existing land within the area between 40 feet of the ditch and the intended building envelope is five (5) percent or less, shall show a minimum 20 foot setback from each side of the ditch, measured from the ditch bank.

2. **Adjacent Grade Greater than 5 Percent.** Where the average grade of the existing land within the area between 40 feet of the ditch and the intended building envelope exceeds five (5) percent, shall show a minimum 20 foot setback from the uphill side of the ditch and minimum 40 feet on the downhill side of the ditch, measured from the ditch bank.

3. **Additional Setback Required.**  Greater setbacks may be required by other provisions of the Chaffee County Land Use Code (including zoning regulations) or by the Board where warranted because of public safety, terrain or other circumstances; specifically to include disturbance of the ditch embankment.

4. **Reduced Setback.**  Setbacks can be decreased by the ditch owner(s) in accordance with **Section 3.1.3 D**.  A lesser setback may also be approved by the Board in circumstances in which the applicant can demonstrate construction within the building envelope will cause no possible harm to the ditch operator's water right, limit any maintenance operations and

property owner and successor property owners will indemnify the ditch operator from any damage claims resulting from any water damage.

C. **Irrigation Ditch Crossings and Modifications/Realignments.**

**1.** Irrigation ditch crossings (including without limitation roads, driveways, bridges, culverts, utility lines, fords and fences) and modifications are allowed only with the prior written, notarized and recorded consent of the ditch owner(s). Design of a ditch crossing must meet the reasonable standards defined by the ditch owner(s) and in conformity with any applicable County regulations. The crossing owner should demonstrate that the crossing will not impair or hinder the maintenance and operations of the ditch. As a condition of approval of any Land Use Change (as defined by the Chaffee County Land Use Code), minor plat correction, lot line adjustment, building code permit for new construction, or Individual Sewage Disposal System Permit, any irrigation ditch crossing, new or existing, must be approved in writing via a notarized and recorded agreement signed by the ditch owner(s).

**2.** A ditch owner(s) and the County is entitled to recover from the party requesting the crossing all costs incurred by the ditch owner(s) and/or the County in reviewing and negotiating the crossing or modification, whether or not a crossing or modification is agreed to. A party requesting a ditch crossing or modification in connection with a Land Use Change (as defined by the Chaffee County Land Use Code) shall post a refundable $5,000 deposit with the County to cover the costs which may reasonably be incurred by a ditch owner(s) and/or the County in considering an application for a ditch crossing or modification (a deposit shall not be required for a minor plat correction, lot line adjustment, building code permit or Individual Sewage Disposal System Permit). Any disputes as to the reasonable costs incurred by the ditch owner(s) shall be resolved pursuant to the Agricultural Land Use Conflict Resolution Program discussed below.

**3.** If the County Engineer determines that a ditch owner proposes extraordinary requirements in connection with any Land Use Change (as defined in the County's land use Code), minor plat correction, lot line adjustment, building code permit, or Individual Sewage Disposal System Permit, the County Engineer may recommend that the Board approve other requirements. Notwithstanding any approval by the Board, the ditch owner may have rights concerning such crossing under applicable state or federal law. Activities of the County or subdivider are not intended to annul or abridge these rights.

**4.** Ditch crossings, new or existing, shall be maintained by the owner of the crossing in a manner that assures the crossing in no way impedes the flow of water in the ditch. Clearance of accumulated debris caused by a new or existing crossing that might impede the flow of water in any way is the responsibility of the owner of the crossing.

**5.** The owner of a ditch crossing is liable for any damage caused by the crossing such as ditch overflow resulting from debris collecting at and

       impeding flow through the crossing.

  **6.**     If a property owner fails to adequately maintain a ditch crossing, the parties may agree to resolve such a dispute pursuant to the Agricultural Land Use Conflict Resolution Program discussed below.

**D.**    **Agreement by Ditch Owner(s).** When approved in notarized and recorded written form by the ditch owner(s), the width for irrigation ditch easements and for setbacks may be decreased and existing historical easements used to gain access to ditches, headgates, and fences for maintenance or operational purposes may be preserved or replaced with reasonable alternate easements suitable for continuation of the historic use.

**E.**    **Lots Below Irrigation Ditches.** With respect to property adjacent to irrigation ditches and irrigated land with a building envelope located below an irrigation ditch, the applicant for any Land Use Change (as defined in the County's Land Use Code), minor plat correction, lot line adjustment, building code permit for new construction, or Individual Sewage Disposal System Permit must submit a drainage plan that addresses the impact of ditch overtopping. The drainage plan should also demonstrate that the drainage will not impair the operation of the ditch.

**F.**    **Improper Uses of Ditches.** Unless approved by the County Engineer and the ditch owner(s), ditches may not be used as drainage facilities. If the Board, the Chief Building Inspector or Director determines the existence of a ditch through a lot may result in improper use of that ditch then the Board, Chief Building Inspector or Director may require protective measures.

**G.**    **Interfering with Adjusted Headgates.** No person shall willfully and without authority open, close, change, or interfere with any headgate of any ditch, or any water box or measuring device of any ditch for the receiving or delivery of water, after the headgate of the ditch has been adjusted by and is in the control of the division engineer, or after such water box or measuring device has been adopted or employed by the ditch officer in charge.

**H.**    **Altering Ditches to Divert Water or Activity within the Maintenance Easement.** Property owners do not have a right to utilize, cut or alter a ditch merely because it crosses their property; rather, no rights are obtained unless a water right is granted pursuant to state law. No person shall cut, obstruct, alter or damage an irrigation ditch with the intent to cause injury or to steal or divert water.

**I.**    **Penalties.** Following a public hearing, the Board may issue a Cease and Desist Order against any person, firm or corporation violating any provision of this Section 3.1.3 and may take other legal action provided by law. Violations of **Sections 3.1.3 A, B, and C** may be treated as violations of the County zoning code or building code, as applicable, and may be pursued as such pursuant to state statute. If Chaffee County brings legal action to enforce the provisions of this Section, and the County is the prevailing party in such legal action, the County shall be entitled to recover its costs in enforcing the Section, including reasonable attorney and expert fees.

### 3.1.4   Fencing

**A.   Fencing Responsibility.**  As a condition of approval of any Land Use Change to property bordering existing agricultural operations which affects existing fence lines, the applicant shall be required to install and maintain fencing designed to keep livestock off the subject property.  Such fencing shall be consistent with what is necessary to contain livestock and with applicable law.  To the extent possible, such fencing shall be wildlife friendly.

**B.   Penalties.**  Following a public hearing, the Board may issue a Cease and Desist Order against any person, firm or corporation violating any provision of this Section 3.1.4 and may take other legal action provided by law.  Violations of this Section may be treated as violations of the County zoning code or building code, as applicable, and may be pursued as such pursuant to state statute.  If Chaffee County brings legal action to enforce the provisions of this Section, and the County is the prevailing party in such legal action, the County shall be entitled to recover its costs in enforcing the Section, including reasonable attorney and expert fees.

### 3.1.5   Livestock Easements in New Developments.

If an agricultural operator can demonstrate an historical easement for moving livestock across property subject to a proposed Land Use Change (as defined by the Chaffee County Land Use Code), the applicant may be required to include an appropriate easement that allows for the continued movement of livestock, as a condition of approval of the Land Use Change.  Any disputes with respect to such easement may be resolved pursuant to the Agricultural Land Use Conflict Resolution Program discussed below.

### 3.1.6   Agricultural Land Use Conflict Resolution Program

**A.   Creation of Program.**  There is hereby created an Agricultural Land Use Conflict Resolution Program for providing a forum for the resolution of conflicts between or among landowners and/or residents regarding agricultural operations or practices referenced in this Section and occurring within Chaffee County.  The Program is intended to provide rural landowners in Chaffee County with a potentially less costly, more efficient and less contentious alternative to formal legal proceedings that may not be in the best interests of either party to a conflict.

**B.   Mediation Panel to Resolve Conflicts.** A mediation panel shall be available for hearing grievances and making recommendations for resolving agricultural land use conflicts between Chaffee County agricultural operations and other residents.  The mediation panel shall have the responsibility for making recommendations to the parties and any referring entities for the resolution of those conflicts.  A quorum of at least three members shall be required in order to hear a matter and to make recommendations.  The recommendations of the Panel are non-binding and advisory in nature.

**C.   Mediation Panel—Member Pool.**  The Board shall appoint five (5) year-round residents to a pool from which panel members may be chosen.  Priority in appointment shall be given to individuals with mediation, arbitration, and other dispute resolution skills and residents that demonstrate an open, fair and non-prejudicial attitude towards rural land use issues.  Each member shall serve a term

of two years, except that two members of the initial panel shall be appointed for a one year term in order to stagger the terms of the pool members.  Panel members may also include a Colorado Division of Water local water commissioner (from Lake, Chaffee, Fremont or Custer counties), subject to availability.

**D.      Selection of a Panel.**  The County shall coordinate the formation of the panel for a particular matter.  At least two members of any panel must be either knowledgeable about local agriculture or include a local water commissioner in order to constitute a quorum.

**E.      Compensation.** Members of the panel shall receive no compensation, but may receive reasonable expenses incurred in the carrying out of their duties, and the County shall make reasonable staff time and other in-kind resources available to the panel, as needed.

**F.      Process and Rules.** The initial mediation panel—member pool chosen by the Board shall draft and recommend rules or process for the hearing of grievances by the panel. Once drafted, such rules or process shall be presented to the Board for its approval and adoption. Any amendments to such rules and process shall be made in the same manner.  The rules or process recommended by the panel and adopted by the Board shall conform in the minimum to the following:

   **1.   Informal Hearings.** Hearing of grievances shall be informal and appearances before the panel shall be by the parties themselves or their official representative.  A party may be represented by legal counsel to receive general advice on how to proceed or whether to accept a resolution recommended by the panel, but such legal counsel may not make an appearance in person, in writing, or otherwise, before the panel.

   **2.   Acceptance of Recommendations.** Hearing of grievances and acceptance of any recommendation of the panel shall be voluntary; the process is not mandatory and the results are not binding on either party, unless the parties by mutual written agreement agree that they shall be bound by the decision of the mediation panel.

**G.      Confidentiality.** All proceedings shall be confidential and no panel member or other county staff shall disclose any information discovered or made known in the course of any grievance proceeding, without consent by the parties.  Mediation panel members may not compelled to testify concerning any aspect of the prceeding.

### 3.1.7    Review of Applications and Public Education.

**A.      Review of Applications.**  In reviewing any application for a Land Use Change (as defined by the Chaffee County Land Use Code), minor plat correction, lot line adjustment, building code permit for new construction, or Individual Sewage Disposal System permit, the applicable review body shall, to the maximum extent feasible, ensure that such change does not adversely affect any existing agricultural operation on land not a part of the land use application, including maintenance of historic irrigation ditches and access to active agricultural operations.  The following shall be included in the County's approval of permits:

**Exhibit 2**

3                                                                                                                            RIGHT TO FARM AND RANCH

1. **Information to be provided to Landowners and Builders adjacent to Agricultural Operations.** When a Building Permit is issued for new construction in unincorporated areas of the County that are adjacent to agricultural operations, Building Permit applicants shall be provided with a copy or summary of this Ordinance, and a copy or summary of Chaffee County's Code of the West.

2. **Notification required for Land Use Change Approvals.** As of the effective date of this regulation, notification of existence of this Ordinance and of Chaffee County's Code of the West shall be required to be included in the recorded resolution approving any Land Use Change (as defined by the Chaffee County Land Use Code), and, as applicable, on the recorded plat associated with any Land Use Change where the subject property is burdened by a ditch or is located adjacent to an agricultural operation or property.

    B.    **Public Education.** The Board shall encourage title companies and real estate brokers county-wide to voluntarily disclose this Policy to purchasers of real property in the County.

**3.1.8**    **Application.** This regulation shall apply to all property within the corporate limits of this County, the use of which this County has jurisdiction and authority to regulate. The provisions of this regulation regarding irrigation ditches shall not apply to abandoned ditches no longer in service, as determined by the State of Colorado. Chaffee County shall attempt to utilize existing and develop new intergovernmental agreements with cities, towns and other governmental agencies (including the Bureau of Land Management and the Forest Service) within Chaffee County to ensure that this regulation is effective in those agricultural areas that are within the limits of Chaffee County. The County shall endeavor to ensure that this regulation is included when property adjoining agricultural operations or adjacent to irrigation ditches is annexed by a municipality, by refraining from waiving an annexation impact report unless protections are included in the annexation agreement.