**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 22-cv-389-GPG

BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF JEFFERSON, STATE OF COLORADO, a body politic and corporate,

Plaintiff and Counterclaim Defendant,

v.

REED KIRK MCDONALD,

Defendant, Counterclaim Plaintiff, and Third-Party Plaintiff,

v.

JEREMY COHEN,
AMY REISTROFFER,
MADISON PITTS,
ALY DRESSLER, and
JOHN/JANE DOE,

Third-Party Defendants.

**MOTION TO DISMISS DEFENDANT'S
VERIFIED CROSS-COMPLAINT [ECF No. 13]**

Plaintiff and Counterclaim Defendant Board of County Commissioners of the County of Jefferson, State of Colorado, on behalf of Jefferson County, Colorado (the "County"),[1] through

---

[1] The Third-Party Defendants listed in this action have not been served. Further, in the caption of Defendant's Verified Cross-Complaint, "Jefferson County, Colorado" is listed as a party separate from the Board of County Commissioners. However, Defendant only refers to one County entity throughout his pleading and, moreover, the Board of County Commissioners is the appropriate party for an action by or against Jefferson County. *See* C.R.S. § 30-11-105 ("In all suits or proceedings by or against a county, the name in which the county shall sue or be sued shall be, 'The board of county commissioners of the county of...'").

counsel, hereby move the Court to dismiss Defendant's Verified Cross-Complaint [ECF Nos. 13 and 14][2] pursuant to Fed. R. Civ. P. 12(b)(6). In support, the County states as follows:

## D.C.COLO.LCivR 7.1 CERTIFICATION

Pursuant to D.C.COLO.LCivR 7.1(b)(2), undersigned counsel is exempt from conferring for purposes of this motion because it is a brought under Fed. R. Civ. P. 12.

## BACKGROUND

This is a zoning violation case concerning property owned by Defendant Reed Kirk McDonald ("Mr. McDonald") and located in Jefferson County, Colorado (the "Property"). The County initiated this action in Jefferson County Court, alleging that certain activity on the Property violates the Jefferson County Zoning Resolution and seeking to enforce relevant zoning restrictions pursuant to C.R.S. § 30-28-124.5 [ECF No. 5]. Mr. McDonald removed the matter to this Court and the County has filed a Motion to Remand to Jefferson County Court [ECF No. 15].[3]

On March 2, 2022, Mr. McDonald filed Defendant's Verified Cross-Complaint (the "Cross-Complaint") [ECF No. 13], in which he asserts the following claims against the County and additional Third-Party Defendants Jeremy Cohen, Amy Reistroffer, and Madison Pitts (collectively the "County Employees") (the County and the County Employees are referred to herein collectively as the "County Parties"): (1) illegal search under the Fourth Amendment; (2) illegal search under Article II, Section 7 of the Colorado Constitution; (3) unconstitutional custom

---

[2] Defendant submitted two Cross-Complaints at ECF Nos. 13 & 14. The two documents appear to be identical except that ECF No. 13 includes seven exhibits and ECF No. 14 includes an executed verification.

[3] Notably, Mr. McDonald has yet to file an answer to the County's Complaint.

2

or practice, failure to train, and failure to supervise under the Fourth and Fourteenth Amendment; and (4) equal protection violation under the Fourteenth Amendment.[4]

Notably, the claims asserted in the Cross-Complaint against the County Parties are virtually identical to claims Mr. McDonald previously brought in Jefferson County District Court, Case No. 2021CV182, which was dismissed on December 2, 2021 and is now pending an appeal filed by Mr. McDonald. Here, as in that case, Mr. McDonald's claims against the County fail as a matter of law and should be dismissed because Mr. McDonald has failed to identify a policy, pattern, or practice of the County underlying the alleged constitutional violations and because Mr. McDonald does not have a private right of action to enforce the Colorado Constitution.

## STANDARD OF REVIEW

Rule 12(b)(6) tests "the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true." *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994). To survive a Rule 12(b)(6) motion, "[t]he complaint must plead sufficient facts, taken as true, to provide 'plausible grounds' that discovery will reveal evidence to support plaintiff's allegations." *Shero v. City of Grove*, 510 F.3d 1196, 1200 (10th Cir. 2007) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (citing *Twombly*, 550 U.S. at 555). Nor, in this context, does "[p]lausible" mean "likely to be true," rather, plausibility "must refer to the scope of the allegations in the complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from

---

[4] The Cross-Complaint also includes a nuisance claim against John/Jane Doe, which is presumably a private party.

3

conceivable to plausible.'" *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Twombly*, 550 U.S. at 570). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555, 557).

## ARGUMENT

Mr. McDonald's allegations are conclusory and insufficient to allow any plausible ground that the County Parties engaged in any misconduct. Mr. McDonald alleges that the County Parties trespassed on a private gated road and drove miles onto the Property to conduct an illegal search to pursue what Mr. McDonald construes as an anti-agricultural campaign by the County Parties and an anti-whistleblower campaign retaliating against Mr. McDonald for exposing an alleged County tax fraud scheme. However, Mr. McDonald's allegations are threadbare and conclusory and do not meet the pleadings requirement described in *Twombly* or *Iqbal*. The Cross-Complaint merely alleges the County Parties used a stolen gate code to trespass on his property and conduct illegal searches over the course of four years. [Cross-Complaint at 7, 13-14]. However, such allegations do not specify who among the County Parties allegedly engaged in such actions, how such code was "stolen," what was searched, or even how such actions were unlawful.

Further, the allegations wholly fail to describe the circumstances or any detail behind Mr. McDonald's conclusory allegations that the County Employees allegedly admitted to trespassing and allegedly made various statements that they were specifically trained by the County to trespass on private property and conduct searches without a court order. [Cross Complaint at 11, 19, 25]. These allegations are insufficient to establish any constitutional violation.

Without identifying a specific time frame or tying individuals to specific actions, Mr. McDonald also contends that the County's policy is to "permit its employees to aggressively encroach upon a person's right to privacy by committing unwarranted search of property." [Cross-Complaint at 29]. No separate allegations specific to any of individuals named appear in the Complaint. Accordingly, this Court must dismiss the County from this case due to Mr. McDonald's failure to state any claims upon which relief can be granted.

**I.     Mr. McDonald's Claims Against the County Fail Because He Has Not Alleged That a County Pattern or Practice was the Moving Force Behind a Constitutional Violation.**

To state a claim for a constitutional violation against a local government body, Mr. McDonald must allege that a policy, practice, or custom of the entity defendant was the moving force behind the constitutional violations. *Monell v. Dep't of Soc. Serv. of N.Y.*, 436 U.S. 658, 690-91, 694 (1978). Mr. McDonald has not sufficiently alleged any constitutional violation. Further, Mr. McDonald has not identified any policy of Jefferson County underlying the alleged constitutional violations.

**A.     Mr. McDonald has failed to plausibly allege an illegal Fourth Amendment search.**

In order for the County Employees' actions to have constituted a Fourth Amendment search, the County Employees must have physically intruded onto a constitutionally protected area in which Mr. McDonald had a reasonable expectation of privacy. *U.S. v. Moffitt*, 233 F. App'x 409, 411 (5th Cir. 2007). The constitutional protection is not limited to the home but also the home's curtilage. *Bleavins v. Bartels*, 422 F.3d 445, 450-51 (7th Cir. 2005). The Supreme Court has identified four factors to consider in determining the curtilage:

> the proximity of the area claimed to be curtilage to the home, whether the area is included within an enclosure surrounding the home, the nature of the uses to which

5

the area is put, and the steps taken by the resident to protect the area from observation by people passing by.

*United States v. Dunn*, 480 U.S. 294, 301 (1987). However, "[n]o reasonable expectation of privacy exists in 'open fields.'" *Widgren v. Maple Grove Tp.*, 429 F.3d 575, 579 (6th Cir. 2005) (*citing Oliver v. U.S.*, 466 U.S. 170, 177 (1987)). As the Supreme Court in *Oliver* stated:

> open fields do not provide the setting for those intimate activities that the [4th] Amendment is intended to shelter from government interference or surveillance. There is no societal interest in protecting the privacy of those activities, such as the cultivation of crops, that occur in open fields. Moreover, as a practical matter these lands usually are accessible to the public and the police in ways that a home, an office, or commercial structure would not be. It is not generally true that fences or 'No Trespassing' signs effectively bar the public from viewing open fields in rural areas.

466 U.S. at 179. Further, "there is no expectation of privacy in a driveway, particularly where, as here, it is open to observation and use by the public." *Bleavins*, 422 F.3d at 454. "The route which any visitor to a residence would use is not private in the Fourth Amendment sense." *Id*. at 454-55 (*quoting* 1 Wayne R. LaFave, Search and Seizure § 2.3(e), at 592-93 (4th ed.2004)).

Here, the Property, which Mr. McDonald describes as a farm, is presumably comprised of a large amount of open space and would be considered "open fields." Further, Mr. McDonald's own Cross-Complaint dispels any notion that the gate code only belonged to him and was "stolen." Mr. McDonald acknowledges John/Jane Doe disclosed the gate code. [Cross-Complaint at 25, 27.] A private gate code used by multiple property owners would be used not only by Mr. McDonald's neighbors but presumably by individuals visiting or making deliveries to Mr. McDonald and his neighbors.

Further, the alleged searches that took place were related to zoning and public health enforcement, not criminal activity. "Although the Fourth Amendment also provides some

6

protection against administrative or regulatory searches, such investigations are generally less intrusive than one which could potentially lead to criminal sanctions, and are accordingly more likely to be tolerated under the Fourth Amendment." *Jacob v. Twp. of W. Bloomfield*, 531 F.3d 385, 389-90 (6th Cir. 2008). There are also no allegations that any searches were conducted of Mr. McDonald's home, the curtilage of such, or any building on his property. Mr. McDonald merely contends that he has been subject to zoning violations for farming equipment stored on his property and the County Employees "trespassed the subject farm's gated private road to conduct [sic] their illegal and unreasonable search." [Cross-Complaint at 24.] While it is unclear if the County Employees are alleged to have conducted their search from the private road also used by Mr. McDonald's neighbors or actually stepped foot onto Mr. McDonald's property, such actions were not unlawful and clearly fall within the open fields doctrine to which there is no reasonable expectation of privacy. *See Widgren*, 429 F.3d at 579. Even if the County Employees ventured from the private road and up Mr. McDonald's driveway, "there is no expectation of privacy in a driveway." *Bleavins*, 422 F.3d at 454.

Thus, any "searches" that may have occurred were in open fields and made in an administrative or regulatory capacity as the County Employees were from the Planning and Zoning and Public Health Departments. Further, there are no allegations that the County Employees did anything more than at most venture up Mr. McDonald's driveway which Mr. McDonald may be equating to the road that accesses his and his neighbors' properties. This would be akin to a common residential neighborhood to which access is restricted by a locked gate.

### B. Mr. McDonald has failed to state an equal protection claim.

Mr. McDonald asserts equal protection violations under the Fourteenth Amendment in what appear to be improper objections to (1) being issued zoning violations and (2) the tax classification of his Property. [*See* Cross-Complaint at 11-12, 16-19.]

### *Zoning Violations*

In the Cross-Complaint, Mr. McDonald alleges that various zoning violations on surrounding properties have persisted without enforcement action. [*See id.* at 4-5, 18-19.] Thus, it would appear that Mr. McDonald is pursuing an equal protection claim for discriminatory enforcement of zoning regulations.

"In order to assert a viable equal protection claim, plaintiffs must first make a threshold showing that they were treated differently from others who were similarly situated to them." *Campbell v. Buckley*, 203 F.3d 739, 747 (10th Cir. 2000). However, in the context of zoning enforcement, "persons asserting equal protection deprivations of this type must establish intentional discriminatory enforcement of regulations against them; the fact that some other individuals escape prosecution under an ordinance is insufficient to establish intentional selective enforcement of the ordinance." *Zavala v. City & Cnty. of Denver*, 759 P.2d 664 (Colo. 1988); *Calvert v. Safranek*, No. 05-CV-01713-REB-PAC, 2005 WL 8172099, at *5 (D. Colo. Dec. 19, 2005), report and recommendation adopted, No. 05-CV-01713-REB-PAC, 2006 WL 8454580 (D. Colo. Jan. 30, 2006), aff'd, 209 F. App'x 816 (10th Cir. 2006).[5]

Here, Mr. McDonald has wholly failed to allege any evidence of intentional discriminatory enforcement against him other than conclusory statements that he is treated differently from other

---

[5] Copies of unpublished opinions are provided to Plaintiff pursuant to D.C.Colo.LCivR 7.1(e).

farming operations. Mr. McDonald's references to other alleged violations by other property owners near his property are not only unsubstantiated, but irrelevant to this inquiry. While the surrounding properties may also be zoned agricultural, Mr. McDonald has failed to allege sufficient allegations whether the nature of the allegations against the surrounding properties are similar in any way to what is alleged against Mr. McDonald and therefore, similarly situated. Further, Mr. McDonald has wholly failed to allege that complaints for zoning violations have been lodged against the surrounding property owners. However, even if Mr. McDonald was able to sufficiently allege similarly situated surrounding properties, he still cannot show that enforcement against him was the result of an intentional pattern of discrimination. Thus, Mr. McDonald cannot establish any evidence whatsoever of discriminatory enforcement that could support an equal protection claim.

### *Property Taxes*

The Cross-Complaint also includes allegations of "tax fraud," which seems to be an attempt to protest a 2021 decision by the Board of Equalization to classify Mr. McDonald's Property as vacant rather than agricultural land. [*See* Cross-Complaint at 16-19.] However, this action is not appropriate for a challenge to the Property classification; rather, Mr. McDonald would need to follow the appropriate statutory appeal process for such a dispute. Indeed, Mr. McDonald even cites to Colorado's Tax Appeal statute, C.R.S. § 39-8-108, [Cross-Complaint at 19], which provides the proper avenue to protest a property tax classification. Mr. McDonald's allegations regarding the tax classification of his Property have no relevance in this action and cannot possibly support an equal protection claim.

### C.  Mr. McDonald has failed to allege a practice or custom upon which to base entity liability.

Even if Mr. McDonald had adequately pled a constitutional violation, the County cannot be found liable for that violation unless a policy, practice, or custom of the County was the moving force behind the constitutional violations. *Monell,* 436 U.S. at 690-91, 694. To support a practice or custom-based Section 1983 claim, Mr. McDonald must show "the existence of a widespread practice that, although not authorized by written law or express municipal policy, is 'so permanent and well settled as to constitute a 'custom or usage' with the force of law.'" *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988) (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 167-68 (1970)). *See also Jaffe v. City & Cnty. of Denver*, 15 P.3d 806, 813 (Colo. App. 2000).

In further support of this position, the Supreme Court has held that allegations as to a single, isolated incident in the absence of an unconstitutional policy are insufficient to impose municipal liability. *Oklahoma v. Tuttle*, 471 U.S. 808, 823-824 (1985); s*ee also Montoya v. Bd. of Cnty. Comm'rs*, 506 F. Supp. 2d 434, 446 (D. Colo. 2007) ("Plaintiff utterly failed to plead facts that could conceivably support a finding of municipal liability for his placement in segregation . . . Even if such an allegation could be inferred, Plaintiff completely fails to support the allegation with any specific facts suggesting that his segregation rose to the level of a custom or policy, rather than being simply a single act of deprivation disconnected from any wider scheme.").

Here, Mr. McDonald has failed to allege any facts sufficient to support the existence of a practice or custom underlying the alleged constitutional violations – Fourth Amendment and Equal Protection – other than making conclusory allegations. In fact, Mr. McDonald states, "Jeffco routinely targets farming operations to put them out of business." [Cross-Complaint at 6.] However, Mr. McDonald fails to provide any allegations regarding farming operations other than

his own that are aggrieved or disrupted by the County. Although Mr. McDonald generally claims he has been subject to trespasses from the County Parties for four years, he only points to one specific instance in the Cross-Complaint. [*See id.* at 24-27.] Because Mr. McDonald has failed to identify a policy, practice, or custom of the entity defendants that was the moving force behind the alleged constitutional violations, the Court must dismiss the County Parties from this action.

## II.  Mr. McDonald Does Not Have a Private Right of Action to Enforce the State Constitution.

Mr. McDonald also sets forth a claim for violation of his rights under the Colorado Constitution, Article II, Section 7. [Cross-Complaint at 9-10.] However, there is no private right of action to enforce the Colorado Constitution "'where other remedies exist.'" *Walker v. Bd. of Trustees, Reg'l Transp. Dist.*, 76 F. Supp. 2d 1105, 1112 (D. Colo. 1999) (quoting *Bd. of Cnty. Comm'rs of Douglas Cnty. v. Sundheim*, 926 P.2d 545, 553 (Colo. 1996)). Because Mr. McDonald has an adequate remedy available for any violations for an alleged illegal search or discriminatory enforcement pursuant to 42 U.S.C. § 1983 for violation of the United States Constitution, there is no private cause of action to enforce his rights under the Colorado Constitution. *Accord id.* (declining to recognize implied state constitutional action and dismissing claim for violation of Article II, Section 25 of Colorado Constitution). Accordingly, Mr. McDonald has failed to state a claim under the Colorado Constitution, requiring additional grounds for dismissal of this claim.

## CONCLUSION

Accordingly, the County respectfully requests the Court dismiss all claims asserted against it based on Mr. McDonald's failure to set forth sufficient factual allegations to state any claims for relief. The County should be dismissed because there are not sufficient allegations of a pattern or

practice that was the moving force behind a constitutional violation. Additionally, Mr. McDonald's claim under the Colorado Constitution fails because there is no private right of action for State Constitutional claims.

Dated: March 23, 2022                    JEFFERSON COUNTY ATTORNEY'S OFFICE

By: *s/ Jason W. Soronson*
Jason W. Soronson, #50078
Assistant County Attorney
100 Jefferson County Parkway, Suite 5500
Golden, CO 80419
Telephone:  303.271.8932
Fax:  303.271.8901
Email:  jsoronso@jeffco.us
*Attorney for the County*

## CERTIFICATE OF SERVICE

I hereby certify that on March 23, 2022, I filed the foregoing MOTION TO DISMISS DEFENDANT'S VERIFIED CROSS-COMPLAINT [ECF NO. 13] via the US District Court CM/ECF System and served a true and correct copy via U.S. Mail upon the following:

Reed Kirk McDonald, *pro se*
5856 S. Lowell Blvd.
UPS/Ste 163
Littleton, Colorado 80123

*s/ Briana McCarten*